# IN RE ROWELL.

PATENTS; PATENTABILITY.

1. Evidence that an invention because of its economy and simplicity large-
    ly replaced all earlier processes, and came into extensive commercial
    use without business exploitation, is persuasive of that invention
    which it is the purpose of the the patent laws to reward and pro-
    tect.   (Following *Re Thomson*, 26 App. D. C. 419.)

2. Where there is doubt as to the patentability of a device, the doubt
    should be resolved in favor of the applicant.  (Following *Re Schraub-
    stadter*, 26 App. D. C. 331; *Re Eastwood*, 33 App. D. C. 291; *Re
    Harbeck*, 39 App. D. C. 555; and *Re Handschuck*, 46 App. D. C.
    155.)

3. In an application for a patent, certain claims, calling for means
    that would protect the winding and take the shocks and strains
    to which an electric magnet is subjected, were rejected on refer-
    ences cited.   Such prior patents were known to have been fail-
    ures, and there was evidence tending to show that the invention in
    issue was a commercial success and had come into extensive use
    without business exploitation.  It was *held*, reversing a decision of
    the Commissioner, that such claims should be allowed.

No. 1185.   Patent Appeals.   Submitted November 15, 1918.   Decided De-
                        cember 2, 1918.

HEARING on an appeal from a decision of the Commissioner
of Patents rejecting certain claims of an application for a pat-
ent.                   *Reversed as to claims 12, 13, 14, and 15.*

The facts are stated in the opinion.

*Mr. Edwin B. H. Tower, Jr.,* for the appellant.

*Mr. Theodore A. Hostetler* for the Commissioner of Patents.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

Lewis D. Rowell applied for a patent on certain features of an electro magnet used for the purpose of lifting pig iron, billets, scrap, and other heavy material. Some of the claims were allowed, and others were rejected on the ground of unpatentability. From the order of rejection Rowell appeals. We think the Patent Office was right in refusing all the claims, save those numbered 12, 13, 14, and 15. Claim 14 is fairly typical of the others, and reads as follows: "A lifting magnet having a frame provided with an inner pole surrounded by an annular outer pole, an energizing winding arranged in an annular recess between said poles, a nonmagnetic plate covering said recess, and a heavy removable magnetic pole shoe on the active face of one of said poles to take the shocks and strains to which the magnet is subjected, said shoe projecting sufficiently below the winding to protect the same."

In brief the claims in question call for means that will protect the winding, and take the shocks and strains to which the magnet is subjected. It is said that all the features disclosed by the claims were suggested by patents granted to Corey, Pick, and Eastwood. The Corey patent relates to a track brake, the other patents to electro magnets. Piek had one and Eastwood two magnets; practically speaking, all were failures. In the application for his second patent Eastwood admits in effect that his first patent was not a success; for he says of it: "The repair of the magnet, including the renewal of the coil and brass plate, is therefore a tedious and expensive matter. My present invention provides means for overcoming these difficulties." The record shows that his "present invention" did not accomplish what he had hoped for.

Two electrical engineers of wide experience testified to the effect that the magnets on the market before the Rowell invention appeared would not stand up in service sufficiently long to make it profitable and economical to handle pig iron and the like with them,—that they were failures, and that the problem which confronted engineers, and which they were continuously

endeavoring to solve, was the production of a lifting magnet which would stand the shocks and strains encountered in prac-tice, would have the delicate electrical elements thoroughly protected, would endure the weather, could be manufactured at a reasonable cost, and would operate for a prolonged period without requiring repairs; but they had all failed until Rowell appeared. His magnet, they said, is so superior to others that it is in general use, and all lifting magnets on the market are made in accordance with the Rowell structure. If the Corey, Piek, and Eastwood inventions taught Rowell the things em-bodied in the claims we are considering, why did not their in-ventors perceive what they had to reveal and inculcate before Rowell disclosed his conception? Why should those inventions speak to Rowell but not to those who had conceived them? Corey, Piek, and Eastwood were searching for just what Row-ell found, but they derived no assistance from their previous discoveries, or at least not enough to guide them to the desired thing. Rowell solved the problem which up to his time had puzzled men skilled in the art. It would seem that his achieve-ment must have in it the element of invention.

There is nothing in the record to show that any special effort was made to place the Rowell magnet in commercial use; yet it is employed extensively and has in effect displaced all other magnets. This is significant. A discovery which is "generally accepted as so great an advance over any process known before that, without puffing or other business exploitation, it promptly came into extensive use,    *    *    *    and that, because of its economy and simplicity, it has largely replaced all earlier processes," furnishes "persuasive evidence of that invention which it is the purpose of the patent laws to reward and pro-tect." *Minerals Separation* v. *Hyde,* 242 U. S. 261, 61 L. ed. 286, 37 Sup. Ct. Rep. 82. This court has spoken to like effect in *Re Thomson,* 26 App. D. C. 419, 425, wherein it is said: "The testimony going to show the practical success of the ap-plicant's combination, the truth of which is substantially con-ceded, is entitled to material weight. Owing to the very seri-ous difficulties which appear to have been successfully overcome

by the applicant, other electrical train-lighting systems have not gone into general use. The demand for an improved system has been an urgent one for years, and yet no other inventor, or electrical expert, with all the knowledge afforded by prior patents and constructions, has succeeded in devising a system answering this demand. * * * It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of an invention." Judge Sanborn, speaking for the court in *Luminous Unit Co.* v. *Freeman-Sweet Co.* 249 Fed. 876, 877, said in response to an attack on the patentability of an invention: "Where many failed, one has succeeded, and in so brilliant a fashion as to suggest the presence of the magic touch which is invention." See also *Webster Loom Co.* v. *Higgins,* 105 U. S. 580, 591, 26 L. ed. 1177, 1181. With some modification the same language may be applied to Rowell in the present case.

Even if it be conceded that there is serious doubt as to the patentability of the devices covered by the claims we are considering, the doubt should be resolved in favor of the applicant. Such has been the holding of this court in more than one case. (*Re Schraubstadler,* 26 App. D. C. 331; *Re Eastwood,* 33 App. D. C. 291; *Re Harbeck,* 39 App. D. C. 555; *Re Handschuck,* 46 App. D. C. 155.)

The decision of the Commissioner with respect to claims 12, 13, 14, and 15 is reversed, and those claims are allowed as patentable to Lewis D. Rowell.                    *Reversed.*